UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| MICHELLE IDLEMAN, ON BEHALF | * | CIVIL ACTION NO.: |
| OF THE MINOR CHILDREN, CHLOE | * | |
| THIBODEAUX AND LOGAN | * | |
| THIBODEAUX, AND LILAH | * | |
| THIBODEAUX, INDIVIDUALLY | * | JUDGE: |
| | * | |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE: |
| SHERIFF MARK GARBER | * | |
| MAJOR KENNY BENOIT, | * | |
| MONA BERGEAUX, AND | * | |
| OFFICER PHILLIP MCCOY | * | DEMAND FOR TRIAL BY JURY |

## COMPLAINT FOR DAMAGES

This Complaint of MICHELLE IDLEMAN, on behalf of the minor children, CHLOE THIBODEAUX and LOGAN THIBODEAUX, and LILAH THIBODEAUX, individually, plaintiffs herein, respectfully shows:

### I. INTRODUCTION

1.

This case arises from the tragic and preventable death of Teddy Dale Thibodeaux, a forty-two-year-old man and father of three children, who died by suicide on September 7, 2025, while in the custody of the Lafayette Parish Correctional Center ("LPCC"). At approximately 0358 hours on September 7, 2025, Deputy Phillip McCoy discovered Offender Teddy

Thibodeaux hanging from the top bunk by a blue bed sheet. The body of Teddy Thibodeaux was cold and in full rigor at the time of postmortem examination, and Acadian Ambulance determined that Mr. Thibodeaux was dead on arrival.

2.

Upon his arrest and booking on August 31, 2025, Mr. Thibodeaux's vital signs were documented as 175/116, a dangerously elevated blood pressure, and the Lafayette Parish Correctional Center was on notice that Mr. Thibodeaux suffered from hypertension and depression and was prescribed medications to treat those conditions, including medications prescribed by his treating provider, Lore Lyndsey Moran, F.N.P. Defendants failed to provide Mr. Thibodeaux with his prescribed medications throughout the entirety of his one-week incarceration. During recorded telephone calls from the jail, Mr. Thibodeaux informed his family that he had not been given his blood pressure medication, that his blood pressure had been checked multiple times by jail personnel, and that if he remained incarcerated for more than a week he did not believe he would survive.

3.

Instead of providing adequate, appropriate, and necessary medical care and treatment to Mr. Thibodeaux, the defendants failed in their professional duties and their legal obligations. Defendants and their staff treated Mr. Thibodeaux with deliberate indifference and callous disregard for his serious medical needs, denied him his prescribed medications, failed to ensure that his mental health needs were properly evaluated and addressed, and failed to adequately monitor his condition and well-being. Rigor mortis had set in by the time Acadian Ambulance arrived on scene, indicating that Mr. Thibodeaux had been dead for a significant period before he was discovered. The defendants' actions and omissions, manifested in inadequate medical

screening and follow-up, failure to provide prescribed medication, inadequate monitoring, and inadequate policies and procedures, were directly and causally related to Mr. Thibodeaux's death.

4.

Plaintiffs bring this action to recover from the defendants compensatory damages, punitive damages, reasonable attorney's fees, judicial interest, and all costs and expenses incurred in these proceedings, pursuant to 42 United States Code, Sections 1983 and 1988, and the Eighth and Fourteenth Amendments to the Constitution of the United States of America, and other applicable statutes and constitutional provisions, based upon the following:

## II. PARTIES

5.

The plaintiffs in this proceeding are:

a.   **MICHELLE IDLEMAN,** a citizen and resident of St. Martin Parish, Louisiana, on behalf of the minor children, **CHLOE THIBODEAUX** and **LOGAN THIBODEAUX,** the minor children of Teddy Dale Thibodeaux; and

b.   **LILAH THIBODEAUX,** a citizen and resident of Texas, the adult child of Teddy Dale Thibodeaux.

6.

Made defendants herein are the following:

a.   **SHERIFF MARK GARBER**, a person of the full age of majority, whose actual domicile and residence are unknown, but who is believed to be a resident and domiciliary of Lafayette Parish, Louisiana and, at all times

described herein was the sheriff of Lafayette Parish, and, as such is responsible for the hiring, training, supervision, discipline and control of the employees of the LPCC, including medical and correctional staff. He is also responsible for the supervision, administration, policies, practices, customs and operations of the LPCC and its correctional facilities. He is a final policymaker. He is liable both directly and vicariously for the actions complained of herein. He is sued in his individual and in his official capacities for those acts and omissions, which occurred while he was Sheriff. As Sheriff of Lafayette Parish he accepts federal funds and is charged with providing custodial care to prisoners in custody of the LPCC and directed all medical providers and/or deputies in the care of, and may be served at the Lafayette Parish Sheriff's Office, 316 West Main Street, Lafayette, Louisiana, 70501; and

b. **MAJOR KENNY BENOIT**, a person of the full age of majority, whose actual domicile and residence are unknown, but at all times described herein was the Warden and was responsible for the hiring, training, supervision, discipline and control of the employees of the LPCC, including medical and correctional staff. He is also responsible for the supervision, administration, policies, practices, customs and operations of the LPCC and its correctional facilities. He is a final policymaker. He is liable both directly and vicariously for the actions complained of herein. He is sued in his individual and in his official capacities for those acts and omissions, which occurred while he was Warden. As Warden of Lafayette Parish, he is charged with providing custodial care to prisoners in custody of the LPCC and directed all medical providers and/or

deputies in the care of, and may be served at the Lafayette Parish Sheriff's Office, 316 West Main Street, Lafayette, Louisiana, 70501; and

c.  **DEFENDANT EMPLOYEE, MONA BERGEAUX,** a person of the full age of majority, whose actual domicile and residence are unknown, who was employed by the Lafayette Parish Sheriff's Office as a licensed practical nurse. At all pertinent times herein, she was responsible for ensuring that there was appropriate and regular monitoring of Mr. Thibodeaux while he was in his custody and care as well as communicating reported or obvious medical needs of prisoners, including Mr. Thibodeaux, to appropriate persons. She was responsible for monitoring, checking on, and supervising the condition of Mr. Thibodeaux as described herein. She also had the duty to report and to intervene if and when he became aware that other deputies or employees of the LPCC were not properly performing their duties relative to Mr. Thibodeaux. She is sued in her official and individual capacities, and may be served at the Lafayette Parish Sheriff's Office, 316 West Main Street, Lafayette, Louisiana, 70501; and

d.  **DEFENDANT OFFICER, PHILLIP MCCOY,** a person of the full age of majority, whose actual domicile and residence are unknown, who was employed by the Lafayette Parish Sheriff's Office as a correctional officer. At all pertinent times herein, he was responsible for ensuring that there was appropriate and regular monitoring of Mr. Thibodeaux while he was in his custody and care as well as communicating reported or obvious medical needs of prisoners, including Mr. Thibodeaux, to appropriate persons. He was responsible for monitoring, checking on, and supervising the condition of Mr. Thibodeaux as

described herein. He also had the duty to report and to intervene if and when he became aware that other deputies or employees of the LPCC were not properly performing their duties relative to Mr. Thibodeaux. He is sued in his official and individual capacities, and may be served at the Lafayette Parish Sheriff's Office, 316 West Main Street, Lafayette, Louisiana, 70501.

## III. JURISDICTION AND VENUE

7.

This is a civil action seeking damages against defendants for committing and conspiring to commit acts, under color of law, which deprived plaintiffs and/or decedent of rights secured under the Constitution and laws of the United States and which deprived plaintiff of liberty and property without due process of the law and of equal protection of the laws, and from cruel and unusual punishment, as guaranteed to the plaintiff by the Eighth, and Fourteenth Amendments to the United States Constitution and other statutes and constitutional provisions.

This Court has jurisdiction pursuant to 42 United States Code, Sections 1983 and 1988, and 28 United States Code, Sections 1331 and 1343, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, et seq.

Jurisdiction of this Court is further invoked pursuant to 28 United States Code, Section 1367, in its exercise of supplemental jurisdiction over Louisiana State Law claims that are so related to claims in the action within the District Court's original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

8.

Venue is proper in this district and division pursuant to 28 United States Code, Section 1391 (b), since this matter happened in Lafayette Parish.

**IV. STATEMENT OF FACTS**

9.

On August 31, 2025, Teddy Dale Thibodeaux (hereinafter referred to as "Teddy") was arrested in Scott, Louisiana, and booked into the Lafayette Parish Correctional Center on outstanding probation and parole and bench warrants related to child support delinquency.

10.

At the time of booking, Mona Bergeaux performed a medical assessment that indicated that Teddy suffered from hypertension and depression and was prescribed medicines that he obtained from the Park Pharmacy. The assessment also recorded Teddy's vital signs to show his blood pressure at 175/116, his heart rate beating at 100 beats per minute, and his respiratory rate at 20 breaths per minute.

11.

A blood pressure reading of 175/116 is a critically high reading. In a clinical setting, a diastolic number (the bottom number) over 110 or 120 is considered a hypertensive crisis or hypertensive urgency. It indicates severe cardiovascular stress and generally requires immediate medical intervention (such as IV or oral antihypertensive medications) to lower it safely and prevent organ damage or stroke. Hypertension of this magnitude can cause acute delirium, confusion, extreme agitation, panic, and hallucinations

12.

Teddy's hypertension was never treated while he was jailed at the Lafayette Parish Correctional Center.

13.

Teddy made one or more request(s) for medical treatment or for the provision and administration of his prescribed medication but was ignored or denied. Mr. Thibodeaux's treating nurse practitioner later indicated that she had not been contacted by the jail to discuss or provide his medications.

14.

During recorded telephone calls from the LPCC, Mr. Thibodeaux told his family that he was not receiving his blood pressure medication, that jail personnel had checked his blood pressure on multiple occasions and were therefore aware of his elevated readings, and that he was concerned he would not survive if he remained incarcerated more than a week. His family observed that his face appeared red during video visits, a visible sign consistent with dangerously elevated blood pressure.

15.

Despite defendants' actual knowledge of Mr. Thibodeaux's serious medical conditions, including hypertension with a documented intake blood pressure of 175/116, depression, and prescribed psychotropic and cardiovascular medications, defendants failed to ensure that Mr. Thibodeaux received his medications, failed to refer him to an appropriate medical provider, and failed to monitor him while knowing he suffered from depression.

16.

A national study funded by the United States Department of Justice, National

Institute of Corrections, found that approximately 93% of jail suicides were committed by hanging, and that bedding and clothing were the most common instruments used.[1] Yet, the LPCC placed Mr. Thibodeaux, who had already informed the LPCC that he was depressed and who had not yet seen a medical professional, into a cell alone and with the bedding materials most commonly used in jail suicides. LPCC then by its own record failed to adequately monitor Mr. Thibodeaux in accordance with their own policies and procedures and as a result Mr. Thibodeaux was able to use those bedding materials to commit suicide.

17.

On September 6-7, 2025, Deputy McCoy was assigned to work the third floor of LPCC from 1800 to 0600 hours. At approximately 0358 hours, during a physical well-being check and while unlocking cells for morning meal service, Deputy McCoy approached cell 13 in 3C housing unit and observed Offender Teddy Thibodeaux hanging from the top bunk from a blue bed sheet in what appeared to be a sitting position just off of the bottom bunk.

18.

Sergeant Taylor Kief reviewed well-being check logs and body-worn camera footage following the incident. According to those records, physical well-being checks were supposedly conducted at approximately 0100, 0128, 0156, 0224, 0252, and 0320 hours, each supposedly consisting of a deputy briefly shining a flashlight into cells. Importantly, the check logged at approximately 0348 was struck out indicating it was not done. The check at which Mr. Thibodeaux was discovered was logged at approximately 0357-0358, which was 8 minutes late from the prior scheduled check.

---

[1] Lindsay M. Hayes, National Center on Institutions and Alternatives, *National Study of Jail Suicide: 20 Years Later* 24 tbls. 18–19 (National Institute of Corrections, U.S. Department of Justice, Apr. 2010).

19.

Upon discovery, Mr. Thibodeaux was observed with a sheet tied to the top of his bunk and around his neck, sitting on the ground, pale in color, and non-responsive. Acadian Ambulance arrived at approximately 0409 and, after a short period of chest compressions, declared Mr. Thibodeaux dead on arrival. Acadian Ambulance reported that rigor mortis had set in.

20.

The postmortem examination, conducted on September 8, 2025, by forensic pathologist Dr. Christopher Ramos of Lafayette Parish Forensics, confirmed that the body was cold and in full rigor at the time of examination, consistent with a significant period of time having elapsed between death and discovery. The presence of full rigor mortis demonstrates that Mr. Thibodeaux had been deceased for hours prior to being found by LPCC. The evidence also confirms the LPCC's monitoring protocols failed to detect Mr. Thibodeaux's condition in time to intervene. Specifically, it demonstrates that the well-being checks supposedly documented into the log and conducted by the LPCC and Defendants herein could not have happened otherwise Mr. Thibodeaux's deceased body would have been found hanging from his bed much earlier than the record reflects.

21.

The size of the cell in which Mr. Thibodeaux was housed was too small for him to not be seen if looking into his cell. Moreover, the resting place of Mr. Thibodeaux's deceased body is in direct view of anyone looking into this cell. Thus, anyone looking into his cell would have seen Mr. Thibodeaux. The evidence shows that the LPCC intentionally failed to observe Mr. Thibodeaux in accordance with its own policies and procedures as well

as its own documented log. Additionally, Mr. Thibodeaux had to have considerable amount of time to prepare and ultimately perform the act that took his life. During this period, had LPCC performed even the most basic monitoring, including visually observing Mr. Thibodeaux inside his cell, LPCC would have discovered that Mr. Thibodeaux was physically preparing to hang himself and would have had the opportunity to intervene before he suffered fatal harm.

22.

The defendants' intentional failure to properly monitor Mr. Thibodeaux, a man they knew to be suffering from untreated hypertension and depression, who had been denied his prescription medications for nearly a week, and who was placed in a cell alone and whose physical deterioration was visible and apparent, reflects deliberate indifference to his serious medical needs and his safety. The risk of serious harm and/or death to Mr. Thibodeaux was known, must have been known or should have been known to the defendants, who failed to take appropriate and necessary measures to protect and preserve his life and safety, as set forth herein.

## V. FIRST CAUSE OF ACTION

**Eighth and Fourteenth Amendment — Deliberate Indifference to Serious Medical Needs (42 U.S.C. § 1983 — Against All Defendants)**

23.

Plaintiffs repeat and re-allege each and every allegation of this Complaint.

24.

The defendants, acting individually and together and under the color of law, engaged in a course of conduct that deprived Teddy Dale Thibodeaux of his constitutional rights, specifically

his right to reasonable and adequate medical care, his right to be free from cruel and unusual punishment, his right to liberty, and his right to due process and equal protection of the laws, as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

25.

At the time of his booking, Mr. Thibodeaux's medical intake documented that his vital signs were 175/116, and defendants were informed that he suffered from hypertension and depression and was prescribed medications including a psychotropic medication and antihypertensive medication. These serious medical conditions were known to the defendants and presented a substantial risk of serious harm, including the risk of suicide, if left untreated.

26.

Despite this actual knowledge, defendants acted unreasonably, recklessly, and with deliberate indifference and disregard for the serious medical needs of Mr. Thibodeaux. Defendants failed to obtain or administer his prescribed medications, failed to refer him to a physician or licensed healthcare provider for evaluation, failed to implement any mental health screening or observation protocol, and failed to contact his prescribing provider. Defendants' intentional failure to take any reasonable measures to address Mr. Thibodeaux's known, serious, and escalating medical needs constituted deliberate indifference in violation of the Eighth and Fourteenth Amendments.

27.

The defendants' actions were reckless, willful, wanton, and malicious.

28.

Plaintiff further alleges that such acts and omissions were the proximate cause and cause

in fact of the death of Teddy Dale Thibodeaux and all damages incurred thereby.

## VI. SECOND CAUSE OF ACTION

**Eighth and Fourteenth Amendment — Failure to Adequately Monitor (42 U.S.C. § 1983 — Against All Defendants)**

29.

Plaintiffs repeat and re-allege each and every allegation of this Complaint.

30.

At all times described herein, defendants had a constitutional duty to monitor Mr. Thibodeaux in a manner consistent with his known serious medical and mental health conditions and the substantial risk of serious harm known to be attendant to those conditions.

31.

Defendants knew that Mr. Thibodeaux was suffering from untreated depression and hypertension, that he had been denied his prescription medications throughout his incarceration, and that his condition had visibly deteriorated during his time at LPCC. These facts presented an obvious and known risk that Mr. Thibodeaux was at heightened risk of self-harm.

32.

Despite this knowledge, Defendants failed to place Mr. Thibodeaux on enhanced observation, suicide watch, or any form of mental health watch. Defendants also failed to implement monitoring protocols sufficient to detect his deteriorating medical and mental condition. Instead, Defendants intentionally failed to monitor Mr. Thibodeaux in accordance with LPCC's own policies and procedures, despite knowing that he suffered from depression and was being housed alone in a cell. These failures created and permitted the dangerous conditions in which Mr. Thibodeaux could harm himself. As a direct result, Mr. Thibodeaux was able to

commit suicide inside his cell.

33.

The fact that rigor mortis had set in by the time Mr. Thibodeaux was discovered demonstrates that he had been deceased for a substantial period before any LPCC personnel detected his condition, in contravention of the existence of a monitoring and well-being check protocol and the alleged documented logs. The intentional failure to adequately monitor Mr. Thibodeaux was wholly inadequate to fulfill the defendants' constitutional obligation to reasonably protect Mr. Thibodeaux from the known, serious risk of harm.

34.

The defendants' failure to adequately monitor Mr. Thibodeaux constituted deliberate indifference to his serious medical needs and his safety, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

35.

Plaintiff further alleges that such acts and omissions were the proximate cause and cause in fact of the death of Teddy Dale Thibodeaux and all damages incurred thereby.

## VII. THIRD CAUSE OF ACTION

**Unconstitutional Policies, Practices, and Customs — Monell Liability (42 U.S.C. § 1983 — Against Defendant Sheriff Mark F. Garber, Warden Kenny Benoit, Mona Bergeaux, and Officer Phillip McCoy)**

36.

Plaintiffs repeat and re-allege each and every allegation of this Complaint.

37.

Defendants Sheriff Garber, Warden Kenny Benoit and Officer Phillip McCoy, acting

individually and collectively, established, condoned, ratified, and/or encouraged customs, policies, patterns, and practices at the LPCC that directly and proximately caused the deprivation of the civil and constitutional rights of Teddy Dale Thibodeaux, as alleged herein, and the injuries and damages described herein, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

38.

These written and unwritten policies, customs, and practices included, among others, the following: inadequate, improper, and unreasonable medical screening and intake procedures that failed to address the serious medical needs of incoming prisoners with known prescriptions and documented vital sign abnormalities; inadequate and unreasonable sick call, referral, and follow-up procedures relative to the serious medical and psychiatric needs of persons in custody; inadequate on-site medical and psychiatric staffing and coverage; inadequate training, supervision, and discipline of medical personnel responsible for furnishing medical and psychiatric treatment and services to persons in custody; inadequate hiring, training, supervision, and discipline of deputies and supervisors responsible for the observation and monitoring of prisoners and the identification and communication of serious medical needs of persons in custody to appropriate medical personnel; a pattern and practice of ignoring prisoners' requests and needs for medical attention so that prisoners' serious medical needs were frequently left unaddressed; and inadequate policies, procedures, and practices relating to the monitoring of prisoners with known mental health and medical conditions, including failing to require regular, frequent, and meaningful assessment of prisoners with known risk factors for self-harm.

39.

At all pertinent times herein, the defendants acted unreasonably and with deliberate

indifference and disregard for the constitutional and civil rights and life and safety of Teddy Dale Thibodeaux. The actions of the defendants were malicious, willful, wanton, and reckless.

40.

Plaintiff further alleges that such acts and omissions were the proximate cause and cause in fact of the death of Teddy Dale Thibodeaux and all damages incurred thereby.

## VIII. FOURTH CAUSE OF ACTION

**Disability Discrimination — Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (Against Defendant Sheriff Mark F. Garber)**

41.

Plaintiffs repeat and re-allege each and every allegation of this Complaint.

42.

Teddy Dale Thibodeaux was a person with disabilities under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, including depression and hypertension requiring prescription medication management.

43.

Defendant Sheriff Garber is in charge of the Lafayette Parish Sheriff's Office, which is a public entity that must comply with Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. The Lafayette Parish Sheriff's Office accepts federal funds and is charged with providing custodial care to prisoners in the custody of the LPCC.

44.

Defendants had actual notice of Mr. Thibodeaux's disabilities, had the means to reasonably accommodate his disabilities, including by obtaining and administering his prescribed medications and providing appropriate mental health screening and services, and failed to make

those reasonable accommodations.

45.

Instead of accommodating Mr. Thibodeaux's needs, the defendants denied him services and programs available to others, including but not limited to access to his prescription medication, access to appropriate medical and psychiatric evaluation and treatment, and any care and treatment that could have protected him from the risk of suicide. The failure to accommodate Mr. Thibodeaux's disabilities was intentional and/or deliberately indifferent to his rights under Section 504 and Title II of the ADA and was a proximate cause of his death.

## IX. FIFTH CAUSE OF ACTION

**Louisiana State Law Claims — Negligence, Gross Negligence, and Wrongful Death (Louisiana Civil Code Articles 2315, 2315.1, 2315.2, and 2317 — Against All Defendants)**

46.

Plaintiffs repeat and re-allege each and every allegation of this Complaint.

47.

The pendant jurisdiction of the Court is invoked for all claims under state law.

48.

At all times described herein, the defendants, individually and collectively, acted negligently, with gross negligence, and/or intentionally in: failing to provide reasonable, adequate, and necessary medical care to Teddy Dale Thibodeaux; failing to administer his prescribed medications despite documented knowledge of his serious medical conditions; failing to adequately monitor Mr. Thibodeaux's condition and well-being during his incarceration; confining him in conditions that failed to address his known risk of self-harm; and otherwise failing to discharge their duties of care owed to Mr. Thibodeaux while he was in their custody, in

violation of Louisiana law, including but not limited to Louisiana Civil Code Articles 2315, 2315.1, 2315.2, and 2317, and the Louisiana Medical Malpractice Act, LSA-R.S. 40:1231.1, *et seq.*

49.

Plaintiffs will separately request the formation of a State Medical Review Panel pursuant to the provisions of the Louisiana Medical Malpractice Act, LSA-R.S. 40:1231.1, *et seq.*, for the evaluation and assessment of this claim against all applicable health care providers. Claimants specifically reserve their right to challenge the constitutionality of the Louisiana Medical Malpractice Act and any portion thereof, and LSA-R.S. 9:5628, as applicable.

50.

The actions and omissions of the defendants also caused the wrongful death of Teddy Dale Thibodeaux. At all pertinent times, the defendants' employees of the LPCC were acting in the course and scope of their employment, and Defendant Sheriff Garber in his official capacity is vicariously liable for the injuries sustained and damages incurred herein as a result of their actions.

51.

The defendants each acted in derogation of their duties as professionals, and their treatment of Teddy Dale Thibodeaux constituted egregious conduct reflecting a wanton disregard for his serious medical needs and his life.

52.

The defendants are liable for the wrongs complained of herein by virtue of encouraging, aiding, abetting, ratifying, and/or condoning the commission of the aforesaid acts, by their failure to properly administer, organize, and staff the medical and correctional program at the jail, and

by their failure to properly screen, hire, train, supervise, and discipline persons under their supervision and control whose acts and omissions contributed to the death of Teddy Dale Thibodeaux.

## X. DAMAGES

53.

As a result of the actions and omissions of the defendants as described above, the following damages have been incurred:

a.    Teddy Dale Thibodeaux suffered conscious physical, mental, and emotional distress, pain and suffering, and pre-death terror prior to his death, and lost his life, all compensable under Louisiana's survival action, Louisiana Civil Code Article 2315.1;

b.    Chloe Thibodeaux and Logan Thibodeaux, the minor children of Teddy Dale Thibodeaux, and Lilah Thibodeaux, suffered and continue to suffer emotional pain and suffering, past, present, and future, and have suffered the loss of love, affection, companionship, guidance, and support of their father, all compensable under Louisiana's wrongful death statute, Louisiana Civil Code Article 2315.2;

c.    Punitive damages are warranted under federal law based on the defendants' reckless and callous disregard of Mr. Thibodeaux's federally protected rights;

d.    Funeral and burial expenses were incurred as a result of the actions alleged herein; and

e.    All other compensatory, special, and general damages proven at trial.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that, after due proceedings, there be judgment rendered

herein in their favor and against all defendants, individually and jointly, as follows:

1.   Compensatory and punitive damages as prayed for herein;

2.   Reasonable attorneys' fees and all costs of these proceedings, including expert witness fees, pursuant to 42 U.S.C. § 1988 and other applicable law;

3.   Legal interest on all monetary awards from the date of judicial demand until paid;

4.   That this matter be tried by a jury; and

5.   All other relief that this Honorable Court deems just and proper.

Respectfully submitted,

s/ Christopher C. Broughton
CHRISTOPHER C. BROUGHTON, T.A.
La. Bar No. 30413
DUDLEY DEBOSIER INJURY LAWYERS
4300 Youree Drive, Suite 250
Shreveport, Louisiana 71105
Direct: (318) 517-6187
Facsimile: (225) 831-1592
cbroughton@dudleydebosier.com

*Attorney for Plaintiffs, Michelle Idleman, on behalf of Chloe Thibodeaux and Logan Thibodeaux*

s/ David Rutledge
DAVID F. RUTLEDGE T.A.
La. Bar No. 33639
330 Settlers Trace Blvd., Ste. A
Lafayette, LA 70508
Telephone (337)484-1529
Facsimile (337) 806-9994
david@davidrutledge.com

*Attorney for Plaintiff, Lilah Thibodeaux*